IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| *In re* | : | |
| | : | |
|    Joseph Kinder, *et al.*, | : | Case No. 1:07-cv-564 |
| | : | |
|        Appellants, | : | District Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER REVERSING AND |
| | : | REMANDING ORDER GRANTING |
| Vanderbilt Mortgage and Finance, | : | OBJECTION TO CONFIRMATION |
| : | | |
| | : | |
|        Appellee. | : | |

      This matter comes before the Court on an Appeal by Motion from the United States Bankruptcy Court, Southern District of Ohio, Western Division in Cincinnati. Appellants Joseph and Stacy Kinder, bankruptcy debtors, appeal an Order Granting Objection to Confirmation issued by the Honorable J. Vincent Aug, Jr., U.S. Bankruptcy Court, Southern District of Ohio, in favor of Appellee Vanderbilt Mortgage and Finance ("Vanderbilt"), a creditor. <u>In re</u> Kinder, No. 07-11079, slip op. (Bankr. S.D. Ohio Jun. 21, 2007).

      For the reasons that follow, the Order Granting Objection to Confirmation is **REVERSED** and **REMANDED**.

**I.      PROCEDURAL BACKGROUND**

      Joseph Kinder, as "debtor," and Stacy Kinder, as "joint debtor," filed a Voluntary Petition for Chapter 13 bankruptcy in the U.S. Bankruptcy Court, Southern District of Ohio, on March 17, 2007. (Doc. 1-7.) Vanderbilt is listed as a creditor on the Claims Register having a secured claim of $81,355.22. (Doc. 1-6.)

1

The Kinders submitted a Chapter 13 Plan on March 21, 2007.  (Doc. 1-8.)  The Chapter 13 Plan listed a proposed secured claim for Vanderbilt in the amount of only $35,000.  (Doc. 1-8 at 3.)  Vanderbilt filed an Objection to Confirmation of the Chapter 13 Plan on April 30, 2007.  (Doc. 1-9.)  Vanderbilt objected to the Kinders' attempt to modify the amount of their secured claim.

The Kinders filed a First Amended Chapter 13 Plan ("the Amended Plan") on May 11, 2007.  (Doc. 1-10.)  The Amended Plan again has a proposed secured claim for Vanderbilt in the amount of $35,000.  (Doc. 1-10 at 3.)  Vanderbilt filed an Objection to Confirmation of the Amended Plan on May 23, 2007.  (Doc. 1-11.)  Vanderbilt again objected to the Kinders' attempts to modify the amount of their secured claim.  Also, Vanderbilt filed a Proof of Claim to the Objection to Confirmation.  The Proof of Claim states that Vanderbilt's total claim at the time the case was filed was $81,355.22 and that the claim was secured by real estate and a mobile home.  (Doc. 1-12.)  The Proof of Claim was evidenced by a mortgage on the real property located at 2767 Glades Road, Minford, Ohio 45653, a retail installment contract for the mobile home, and a certificate of title for the mobile home.  (Id.)  The certificate of title lists the Kinders as the "owners" and Vanderbilt as the "first lienholder."  (Id. at 27.)

On June 21, 2007, Judge Aug issued an Order Granting [Vanderbilt's] Objection to the Confirmation.  In re Kinder, No. 07-11079, slip op.  Judge Aug identified the issue before him as follows:

> The issue before the Court is whether, pursuant to the antimodification provision of 11 U.S.C. §1322(b)(2), the newly added definition by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") of a "debtor's principal residence" in 11 U.S.C. §101(13A) prohibits a debtor from modifying a secured claim that is secured by a lien on the debtor's mobile home and a mortgage on the underlying real property.

Id. slip op. at 1. Judge Aug noted that the following facts were not in dispute: Vanderbilt had a perfected mortgage on the Kinders' real property, Vanderbilt had a perfected security interest on the Kinders' mobile home located on the real property, and the title for the mobile home had not been surrendered to the county auditor. Id. Applying the law to the facts, Judge Aug concluded that "because Vanderbilt has a perfected lien on both the real property and mobile home, we conclude that [Vanderbilt] has a claim secured only in real property that is the Debtor's personal residence, and therefore, that it is protected by the antimodification provision of §1322(b)(2)." Id. slip op. at 1-2. The Kinders were given 20 days to file an amended plan. Id. slip op. at 2.

On July 23, 2007, the Kinders elected to appeal the Order Granting Objection to Confirmation to this Court. Both the Kinders and Vanderbilt have briefed the appeal and the matter is ripe for adjudication.

## II.	STANDARD OF REVIEW OF BANKRUPTCY ORDER

The Court reviews a bankruptcy court's findings of fact for clear error and reviews conclusions of law *de novo*. Davis v. Green Tree Serv., LLC (*In re* Davis), No. 07-8032, — B.R. —, 2008 WL 1733396, *1 (B.A.P. 6th Cir. Apr. 16, 2008) (on conclusions of law); United Steelworkers of Am. v. Ormet Corp. (*In re* Ormet Corp.), 355 B.R. 37, 42 (S.D. Ohio 2006) (on findings of fact and conclusions of law).

## III.	ANALYSIS

### A.	Applicable Law

Bankruptcy law allows a debtor to modify the contractual rights of a secured creditor by "cramming down" the secured value of the creditor's claim to the fair market value of the collateral securing the claim. The statute by which the cram-down is authorized provides:

3

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1).

The cram-down right is limited by an anti-modification provision stated in 11 U.S.C. § 1322(b)(2).  The anti-modification provision states that debtors in their proposed bankruptcy plans may "modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence[.]"  11 U.S.C. § 1322(b)(2) (emphasis added).

As noted by Judge Aug in his Order Granting Objection to Confirmation, the BAPCPA of 2005 for the first time defined the term "debtor's principal residence."  It provides:

> The term "debtor's principal residence" —
> (A) means a residential structure, including incidental property, without regard to whether that structure is attached to real property; and
> (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer.

11 U.S.C.A. § 101(13A).

The BAPCPA did not modify 11 U.S.C. § 1322(b)(2) directly, but there is a dispute whether it changed the scope of the anti-modification provision indirectly.  Prior to the enactment of the BAPCPA, courts had applied state law to determine if collateral property qualified as real property.  See e.g., Nobelman v. American Sav. Bank, 508 U.S. 324, 329 (1993) (in the absence of controlling federal bankruptcy law, courts assume that state law determines the property rights in the assets of a debtor's estate); Cluxton v. Fifth Third Bank (*In re*

4

Cluxton), 327 B.R. 612, 614-15 (B.A.P. 6th Cir. 2005) (applying Ohio law to determine if mobile home was real property).  Only if the collateral property both qualified as real property under state law and was the debtor's personal residence did the anti-modification provision apply to protect the creditor's secured interest against a cram-down.  At issue in this appeal is whether the addition in the BAPCPA of a definition of "debtor's personal residence" changed the interpretation of 11 U.S.C § 1322(b)(2) to effectively prohibit the modification of a claim secured by both real property and a mobile home even if the mobile home qualified as personal property under state law.

     Both parties recognize that there has been a split in authority in the courts.  Some courts have concluded that post-BAPCPA the anti-modification provision of § 1322(b)(2) was expanded to prohibit the modification of a claim secured by a mobile home that is the debtor's personal residence regardless of whether the mobile home qualified as personal property or real property under state law.  See e.g., In re Shepherd, 354 B.R. 505 (Bankr. E.D. Tenn. 2006), rev'd 381 B.R. 675 (E.D. Tenn. 2008); In re Kinder, No. 07-11079, slip op. at 1-2.  Other courts have concluded that the definition of "debtor's personal residence" in the BAPCPA did not change the scope of anti-modification provision of § 1322(b)(2) and that a claim secured by both real property and a mobile home is subject to modification if the mobile home qualifies as personal property under state law.  See e.g., In re Reinhardt, No. 06-14376, slip op. at 3-4 (Bankr. S.D. Ohio Nov. 13. 2007); Moss v. Greentree-AL, LLC (In re Moss), 378 B.R. 655 (S.D. Ala. 2007).

     The Bankruptcy Appellate Panel ("B.A.P.") of the Sixth Circuit recently undertook to resolve this split of authority in In re Davis.  It noted that the requirements of the anti-modification provision of § 1322(b)(2), both before and after the BAPCPA, are "(1) that the

5

property is real property; (2) that the real property is the debtor's personal residence; and (3) that there is no additional collateral." In re Davis, 2008 WL 1733396, at *2-3. It found that the BAPCPA definition of "debtor's personal residence" affected only the second requirement and did not change the analysis of the first requirement. Id. at *3. Rather, state law should still be used to determine whether property qualifies as real property. Id. at *4. Finally, the Court held that the addition of a definition for "debtor's principal residence" in the BAPCPA did not change the scope of the anti-modification provision of 11 U.S.C. § 1322(b)(2) and that the provision is applicable only to real property. Id.

This Court adopts the well-reasoned holding of the In re Davis B.A.P. decision, and therefore, reverses the decision below. The Court holds that Vanderbilt's secured claim is protected by the anti-modification provision only if the Kinders' mobile home qualified as real property under Ohio law. A two-fold test is applied to determine if the mobile home is real property under Ohio law: "(1) determine whether the certificate of title to the mobile home had been turned over to the county auditor under Ohio Revised Code § 4505.11(H)(1) or (2) apply the traditional fixture analysis under state law by looking at the physical annexation of the home to the land, the use of the home, and the parties' intent." Id.; see also In re Cluxton, 327 B.R. at 614-15 (same). Judge Aug determined below that title to the Kinders' mobile home had not been surrendered to the county auditor, and therefore, it had not become part of the real property for taxing purposes. However, it does not appear that Judge Aug specifically conducted a traditional fixture analysis. Accordingly, the decision below is reversed and remanded for a determination of whether the Kinders' mobile home is real property under Ohio law.

IV.     CONCLUSION

The Order Granting Objection to Confirmation issued below is **REVERSED AND REMANDED** consistent with the decision herein.

IT IS SO ORDERED.

    ___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge